

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Board of Insurance Commissioners
Austin, Texas

Gentlemen:

Opinion No. 0-3360
Re: Should the Board of Insurance
Commissioners accept the dis-
solution papers of Ginners
Mutual Underwriters Associa-
tion of Tyler, Texas, as filed,
cancel the company's charter
and permit the distribution
of its assets in the manner
set out.

The request of the Honorable Reuben Williams,
former Chairman of the Board of Insurance Commissioners, for
our opinion in the hereinabove captioned question has been
received by this department. We quote from Mr. Williams'
letter as follows:

"The Ginners Mutual Underwriters Associa-
tion, of Tyler, Texas, was incorporated and
chartered under the General Laws of Texas in
1902. During the year 1908 a new charter was
granted and new by-laws adopted providing for
the operation of the Association under what is
now repealed Chapter 9, Title 78, Revised Civil
Statutes of Texas. The Association has been
licensed continually since that date to February
28, 1940, to write fire insurance on the mutual
plan. The last examination of this organization
was made as of December 31, 1939, at which time
it was found to have only eleven insurance
policies in force, although it had admitted as-
sets of $37,793.72 and total liabilities of
$439.15, leaving a surplus of $37,354.57.

"Some time after the completion of the last
examination and after the Association had filed
its annual statement for 1939, the Department of
Insurance notified the officers that the license

would not be renewed because it was considered the number of policies in force did not comply with the law in that respect. We have had some correspondence and conferences with the officers since this notice was given, and it was mutually agreed that the Association would either build up its membership to the required amount or dissolve. March 1, 1941, was agreed upon as the date when some definite disposition would be made of the Association's affairs. Just prior to March 1st we had a conference with representatives of the Association, which conference was attended by your Assistant, Mr. Armstrong. It was further agreed in this conference that the Association would dissolve and file with the Department of Insurance all necessary dissolution papers.

"We have now received dissolution papers from the Association which are attached for your information in rendering the opinion now requested. It will be noted from these papers that Mrs. Dabney White, one of the officers of the Association is the only remaining policyholder and that in dissolving the Association is it proposed to distribute to her the remaining assets of $36,738.46.

"Inasmuch as this presents an unusual situation in that if the dissolution papers are accepted by the Department and the Company's charter canceled, it results in turning over the assets named to one policyholder, you are requested to advise us if we should accept these dissolution papers as filed, cancel the Company's charter and permit the distribution of its assets in the manner set out in these papers."

We also have before us for examination the two instruments constituting the dissolution papers of the association.

While a number of states have enacted statutes regulating the distribution of the assets of insurance companies upon dissolution, we have been unable to find any Texas

statute applicable to the problem here involved. We have, likewise, failed to find any Texas cases in which this question has been either decided or discussed.

A mutual insurance corporation, like other corporations, owns the property, but the members own the corporation. In the case of Smith vs. Hunterton County Mutual Fire Insurance Company, 41 N. J. Eq. 473, 4 Atl. 652, the court held that the surplus should be divided among all the policyholders, past as well as present, who had contributed to the surplus. This holding, however, has not only failed to receive support in subsequent cases, but has been criticized on a number of grounds. In Titcomb vs. Kennebunk Mutual Fire Insurance Company, 79 Maine 315, 9 Atl. 732, the court in holding that the rule, requiring all persons who have ever been members of a corporation to be recognized in a distribution of a surplus by the corporation, was entirely impracticable, used the following language:

> "To distribute among them a small amount of assets, and to determine what each former policyholder's share ought in equity to be, would be attended with difficulty and an amount of labor which the end would not justify."

In Huber vs. Martin, 127 Wisc. 412, 105 N. W. 1031, the court criticized the rule involved in the Smith case, supra, as being illogical and evidently based on erroneous interpretation of the holding in Carlton vs. Southern Mutual Insurance Company, 72 Ga. 371, which turned upon a construction of language in the charter which the Georgia court felt bound to hold was used to make everyone who contributed to the corporate surplus a member or stockholder, for the purpose of any distribution of such surplus.

The better view, therefore, appears to be that after the payment of debts the assets belong to those who are members at the time of dissolution, which in the absence of a charter provision to the contrary, includes only present policyholders. Huber vs. Martin, supra, 14 R. C. L. Sec. 14, p. 849; 29 Am. Jur. Sec. 79, 106; Stamm vs. Northwestern Mutual Benefit Association, 65 Mich. 317, 32 N. W. 710; Adams vs. Northwestern Endowment and Legacy Association, 63 Minn.

184, 65 N. W. 360; Note in 7 of Ann. Cases 412; Note in 3 L. R. A. (new series) 653. We know of no reason why the rule should be any different where, as under the facts submitted, only one stockholder or member remains at the time of the dissolution.

While we have not had the charter of the Ginners Mutual Underwriters Association submitted to us for examination, we presume from the request letter that it contains no provisions declaring who shall be considered a member for the purpose of distributing assets on dissolution of the corporation.

In view of an apparent misconstruction frequently placed upon the holding in Titcomb vs. Kennebunk Mutual Fire Insurance Company case, supra, we deem it advisable to mention it here. This case did hold that after the dissolution of a mutual insurance company the remaining assets vested in the state, the court holding that neither the former policyholders nor the corporators had any interest in the assets, but in that case the last policy had expired and there were no existing policyholders. It was absolutely without membership at the time of dissolution.

In view of the authorities hereinabove mentioned, you are respectfully advised that it is the opinion of this department that, under the facts submitted, your question should be answered in the affirmative and it is so answered.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 1, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By _Edgar Pfeil_
Edgar Pfeil
Assistant

EP:ej

